IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| SAMUEL TODD WILLIAMS, | ) | CASE NO.3:16-CV-01599 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| JASON BUNTING, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Respondent. | ) | |

**Introduction**

Before me by referral[1] is Samuel Todd Williams *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Williams is currently incarcerated by the State of Ohio at the Marion Correctional Institution[3] where he serves two consecutive life sentences for aggravated murder, in addition to consecutive sentences for kidnapping and aggravated burglary, such sentences to be served consecutively with the life sentences.[4]  The Lucas

---

[1] ECF Nos. 6, 47.
[2] ECF No. 1.
[3] drc.ohio.gov/offendersearch
[4] ECF No. 15, Attachment (state record) at 83.

County Court of Common Pleas imposed these sentences after Williams's conviction after a jury trial.[5]

Williams here asserts ten grounds for habeas relief.[6] The State in its return of the writ maintains that the petition should be dismissed in part and denied in part.[7] Williams filed a traverse.[8]

For the reasons stated below, I recommend that the petition be dismissed in part and denied in part.

## Facts

### Background facts, trial, and sentence

Although the Ohio appeals court provided a lengthy and detailed recitation of the facts,[9] a more concise presentation is warranted here.

Essentially, in the early morning hours of January 31, 2011, sheriff's deputies found the bodies of Lisa Straub and her boyfriend, Johnny Clarke, lying face up on the kitchen floor of the Straub home in Holland, Ohio with plastic bags secured over their heads and

---

[5] *Id*. at 75.
[6] ECF No. 1 at 5,7,9 and 10.
[7] ECF No. 15. The State also filed a supplemental return of the writ that does not alter the original analysis of the grounds raised. ECF No. 43.
[8] ECF No. 20.
[9] ECF No. 15 at 2-12 (quoting appeals court decision). As is well-known, facts found by the state appeals court in its review of the record are presumed correct by the federal habeas court unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

their hands bound behind their backs.[10] Investigating deputies found that a second floor bedroom had been ransacked and there were signs of a struggle in other rooms.[11] Six white envelopes containing Iraqi currency were found in the closet of the master bedroom.[12]

Johnny had been living in the Straub home for a few months, and Lisa's parents were away on an extended vacation.[13]

Johnny Clarke was known to many people as someone who "liked to brag, … used Percocet and marijuana, and … sold weed."[14] Among this group was a belief that the Straub house contained a safe with a "lot of money."[15] But Jeff Straub, Lisa's father, testified that he had no safe, nor did he keep large amounts of currency or jewelry in the home.[16] But he did have $4,500 worth of Iraqi dinar underneath his chest of drawers in the master bedroom closet.[17]

That said, Williams, along with two other men, entered the Straub house looking for the money they believed was kept in a safe.[18] After ransacking the house and finding no safe and no money, except for the Iraqi currency, which they did not take because they did not know how to convert it into U.S. currency, the intruders decided to torture Lisa in front

---

[10] ECF No. 15 at 3 (quoting state appeals court decision).
[11] *Id.*
[12] *Id.* at 4.
[13] *Id.*
[14] *Id.* at 5.
[15] *Id.*
[16] *Id.* at 4.
[17] *Id.*
[18] *Id.* at 10.

of Johnny with the intention of forcing him to disclose the location of the money and any drugs in the house.[19] Lisa, however, suffocated to death without telling them what they wanted to hear, as did Johnny.[20]

Williams was indicted on two counts of aggravated murder with specifications, as well as two counts of kidnapping and one count of aggravated burglary.[21] At a jury trial, at which Williams did not testify, Williams was convicted on all five counts.[22] After the jury deadlocked as to sentencing, the Lucas County trial court, on August 10, 2012, sentenced Williams to two consecutive life terms without the possibility of parole for the two murder convictions and ten years each on the remaining counts, with such terms to be served consecutively but concurrently with the life sentences.[23]

### *Direct appeal*

#### *Ohio appeals court*

On August 29, 2012, Williams, through new counsel,[24] timely[25] appealed to the Ohio appellate court.[26] Williams initially raised the following nine assignments of error:

---

[19] *Id.*
[20] *Id.* at 30.
[21] *Id.* at 13.
[22] *Id.* at 14.
[23] *Id.*
[24] He was represented by John Thebes and Jane Roman at trial. ECF No. 15, Attachment at 83. He was represented by George Conklin on appeal. ECF No. 15, Attachment at 86.
[25] Pursuant to Ohio App. Rule 4(A)(1) a notice of appeal must be filed within 30 days of the judgment.
[26] ECF No. 15, Attachment at 86.

1.      Appellant's convictions were not supported by a sufficiency of the evidence.

2.      Appellant's convictions are against the manifest weight of the evidence.

3.      The trial court erred in failing to grant appellant's Rule 29 motion to dismiss at the time of trial.

4.      The trial court erred by failing to grant appellant's motion for change of venue, thereby denying his due process and equal protection rights afforded him pursuant to the United State Constitution and the Ohio Constitution.

5.      The trial court erred in failing to grant defendant's objection to exclude photographs of the deceased and thereby violated his constitutional rights to due process, a fair trial, the right to confront evidence and the right to be free from arbitrary, cruel and unusual punishment in contradiction to U.S. Constitution, Amendments V, VI, VII (*sic*), IX and XIV and the privileges granted in the Ohio Constitution.

6.      The trial court erred in denying the appellant's motion to suppress the search of his person, in violation of the appellant's constitutional rights as guaranteed by the Fourth and Fourteenth Amendments.

7.      The appellant was denied effective assistance of counsel, further denying him the right to due process, equal protection under the law and the right to a fair trial as guaranteed by the U.S. Constitution and the Fifth Amendment, Sixth

Amendment, Eighth Amendment, Ninth    Amendment    and    the    Fourteenth

Amendment and those guaranteed under the Ohio Constitution.

8.      The court erred in allowing the jury to have a portion of the transcript of a

witness re-read to them, thereby placing undue emphasis on the testimony and

denying the appellant a fair trial.

9.      The cumulative effect of the errors committed by the trial court violated the

appellant's right to a fair trial and his constitutional rights to due process, the right

to confront evidence and the right to be free from arbitrary, cruel and unusual

punishment in contradiction to U.S. Constitution, Amendments V, VI, VII (sic), IX

and XIV and the privileges granted in the Ohio Constitution.[27]

The State filed a responsive brief,[28] to which Williams replied.[29]

Subsequently, and with the court's permission,[30] Williams amended his brief to add

the following assignment of error:

10.     The trial court erred to the prejudice of Mr. Williams when it ordered him to

pay     unspecified costs, including fees, without first determining the ability to pay

those   costs.[31]

---

[27] *Id*. at 93.
[28] *Id*. at 159.
[29] *Id*. at 202.
[30] *Id*. at 233.
[31] *Id*. at 235.

The State filed an amended responsive brief.[32] On January 30, 2015, the Ohio court of appeals overruled all of Williams's assignments of error and affirmed the judgment of the trial court.[33]

### Supreme Court of Ohio

On March 12, 2015, Williams, *pro se*, timely[34] filed a notice of appeal with the Supreme Court of Ohio.[35] In his memorandum in support of jurisdiction,[36] Williams raised as propositions of law exactly the same ten arguments he had presented to the Ohio appeals court.[37] The State filed a brief opposing jurisdiction.[38] On June 24, 2015, the Supreme Court of Ohio declined jurisdiction, dismissing the case.[39] The record does not show that Williams then sought a writ of certiorari from the United States Supreme Court.

### Post-conviction

On February 3, 2016, Williams, *pro se*, filed an untimely[40] application under Ohio Appellate Rule 26(B) to reopen his appeal.[41] In the application, Williams states that he was

---

[32] *Id*. at 300.

[33] *State v. Williams*, 2015 WL 461895. See also, ECF No. 15, Attachment at 365.

[34] A notice of appeal must be filed with the Supreme Court of Ohio within 45 days of the judgment being appealed. Ohio Supreme Court Rule of Practice 7.01(A).

[35] ECF No. 15, Attachment at 345.

[36] *Id*. at 347.

[37] *Id*. at 348-49.

[38] *Id*. at 413.

[39] *State v. Williams*, 142 Ohio St.3d 1519 (Ohio 2015) (table).

[40] Ohio App. R. 26(B) provides that an application to reopen the appeal must be filed within 90 days of the journalization of the appellate judgment.

[41] ECF No. 15, Attachment at 431.

precluded from filing within the time limit because the prison withheld his incoming legal mail that included his trial transcripts.[42] The court of appeals denied the motion for delayed filing, finding that Williams had not met the 90-day deadline for filing, which must be "consistently enforced," and that his inability to secure the trial transcripts from counsel does not constitute a good reason for the delay in filing.[43]

Williams appealed that decision to the Supreme Court of Ohio.[44] On June 15, 2016, the Ohio Supreme Court declined jurisdiction.[45]

### *Federal habeas petition*

On June 16, 2016,[46] Williams, *pro se*, timely[47] filed the present petition for federal habeas relief.[48] In the petition he raised ten grounds for relief, which are identical to those raised to the Ohio courts in the direct appeal:

1.     The appellant's convictions were not supported by a sufficiency of the evidence.

2.     Appellant's convictions are against the manifest weight of the evidence.

---

[42] *Id.* at 431-32.

[43] *Id*.

[44] *Id*. at 442

[45] *Id*. at 560.

[46] ECF No. 1 at 16. This is when Williams states that he put the petition in the prison mail system. The petition was docketed here on June 24, 2016. Under the so-called prison mailbox rule the petition is deemed filed on the day it is placed into the prison mail system. *Houston v. Lack*, 489 U.S. 266, 271-72 (1988).

[47] Williams conviction was final when the Ohio Supreme Court declined jurisdiction in his direct appeal on June 24, 2015. This petition was filed within one year of that date. 28 U.S.C. § 2241(d)(1).

[48]  ECF No.1.

3.      The trial court erred in failing to grant petitioner's Rule 29 motion to dismiss at the time    of trial.

4.      The trial court erred by failing to grant petitioner's motion for change of venue, thereby       denying his due process and equal protection rights.

5.      The trial court erred in failing to grant defendant's objection to exclude photographs of       the deceased and thereby violated his constitutional right to due process, a fair trial, the      right to be free from arbitrary, cruel and unusual punishment in contradiction to the U.S.    Constitution, Amendments V, VI, VII (*sic*), IX and XIV and the privileges granted in the  Ohio Constitution.

6.      The trial court erred in denying the petitioner's motion to suppress a search of his person,        in violation of the petitioner's constitutional rights as guaranteed by the Fourth and    Fourteenth Amendments.

7.      The petitioner was denied effective assistance of counsel, further denying him the right to       due process, equal protection under the law and the right to a fair trial as guaranteed by        the U.S. Constitution and the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments and        those guaranteed under the Ohio Constitution.

8.      The trial court erred in allowing the jury to have a portion of the transcript of a witness        re-read to them, thereby placing undue emphasis on the testimony and denying appellant    a fair trial.

9.     The cumulative effect of the errors committed by the trial court violated the appellant's    right to a fair trial and his constitutional rights to due process, the right to confront      evidence and the right to be free from arbitrary, cruel and unusual punishment in        contradiction to U.S. Constitution, Amendments V, VI, VII (*sic*), IX and XIV and the      privileges granted in the Ohio Constitution.

10.    The trial [] erred when it ordered petitioner to pay unspecified costs, including fees, without first determining the ability to pay those costs.[49]

The State filed a return of the writ asserting that the petition should be dismissed in part as involving non-cognizable claims and denied in part because the decision of the Ohio appeals court on these claims was not an unreasonable application of clearly established federal law.[50] Williams filed a traverse which does not address the argument that some grounds for relief are non-cognizable but which contends that the state appellate court decision unreasonably applied clearly established federal law.[51]

Subsequent to the filing of the traverse, proceedings here were stayed so that Ohio courts could adjudicate Williams's motion for a new trial.[52] The stay was not ultimately

---

[49] ECF No. 1 at 5,7,9 and 10.
[50] ECF No. 15.
[51] ECF No. 20.
[52] ECF No. 27.

lifted until May 12, 2020.[53] In preparation for the lifting of the stay, the State filed a supplemental return of the writ containing additional portions of the record.[54]

## Analysis

### *Preliminary observations*

Before proceeding further, I make the following preliminary observations:

1.      There is no dispute that Williams is currently in custody of the State of Ohio as the result  of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[55]

2.      There is also no dispute, as detailed above, that the petition was timely filed pursuant to      the applicable statute.[56]

3.      In addition, Williams states[57], and my own review of this Court's docket confirms, that     this is not a second or successive petition for federal habeas as concerns this conviction and sentence.[58]

---

[53] Non-document order and re-referral to Magistrate Judge entered by United States District Judge Christopher A. Boyko.
[54] ECF No. 43.
[55] 28 U.S.C. § 2254(a).
[56] 28 U.S.C. § 2254(d)(1).
[57] ECF No. 1 at 16.
[58] 28 U.S.C § 2254(b).

4.     Moreover, it further appears that all these claims have been totally exhausted by reason of having been raised to Ohio courts through one full round of Ohio's established appellate     review procedure.[59]

5.     Finally, Williams has previously sought[60] and was denied[61] the appointment of counsel[62]     and previously sought[63] and was denied[64] an evidentiary hearing.[65]

### *Non-cognizable claims*

As noted above, the State maintains that the following six grounds for relief should be dismissed as non-cognizable:

Ground Two (manifest weight of evidence),

Ground Five (admission of photographs),

Ground Six (Fourth Amendment claim regarding search for DNA),

Ground Eight (re-reading of testimony),

Ground Nine (cumulative error) and,

Ground Ten (imposition of court costs).

---

[59] *Id.*
[60] ECF No. 12.
[61] ECF No. 22.
[62] 28 U.S.C. § 2254(h).
[63] ECF No. 51.
[64] ECF No. 53.
[65] 28 U.S.C. § 2254(e)(2).

*Ground Two – manifest weight*

It is well-settled that the federal constitutional protection of the Due Process clause does not reach claims that a conviction was against the manifest weight of the evidence, which only raises an issue of state law.[66]

*Ground Five – admission of victim photographs*

Generally, the admission of evidence is a matter of state law not cognizable in a federal habeas proceeding.[67] Only when an evidentiary ruling is so egregious that it results in a denial of fundamental fairness may the ruling be said to violate due process and warrant habeas relief.[68] In that regard, courts have defined the category of infractions that violate fundamental fairness "very narrowly"[69] as to include only those rulings that offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."[70]

A claim that a gruesome photograph of a crime victim was improperly admitted has been held not to violate fundamental fairness and so not to be cognizable as a federal habeas ground for relief.[71]

---

[66] *Tibbs v. Florida*, 457 U.S. 31, 45 (1982); *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983).

[67] *Serra v. Mich. Dept of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993) (collecting cases).

[68] *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

[69] *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[70] *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[71] *Cooey v. Coyle*, 289 F.3d 882, 893-94 (6th Cir. 2002); *Wade v. Warden*, 2010 WL 374013, at *8-9 (S.D. Ohio Jan. 28, 2010).

*Ground Six – Fourth Amendment claim regarding search for DNA evidence*

In this claim Williams asserts that there was no probable cause supporting the search that procured a DNA sample from him.

When presented with a Fourth Amendment claim, the relevant inquiry by the federal habeas court is narrow. Namely, federal habeas review of a petitioner's Fourth Amendment claim is barred where the State has provided an opportunity for a full and fair litigation of such claim in the state court.[72] In turn, this inquiry itself means only that the State has provided an available avenue for the petitioner to raise his claim in the state court and so is not an inquiry into the adequacy of the procedure actually used to resolve a particular claim.[73] In short, the relevant inquiry by the federal habeas court is whether the state courts permit the defendant to raise the claim or not.[74]

In answering that question, a federal habeas court makes two inquiries: (1) whether the State provides a procedural mechanism through which such claims may be raised, and (2) whether the petitioner was frustrated in presenting his claim due to a failure of that mechanism.[75]

Here, as to the first inquiry, Ohio does provide a mechanism for raising Fourth Amendment claims in the form a motion to suppress at the trial court and then a direct

---

[72] *Stone v. Powell*, 428 U.S. 465, 495 (1976).
[73] *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013), *cert. denied*, 135 S.Ct. 1174 (2015).
[74] *Id*. at 640.
[75] *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).

appeal as of right from the denial of that motion.[76] Further, as to the second inquiry, Williams took full advantage of the established Ohio procedure for asserting such claims by filing a motion to suppress and then an appeal from the denial of that motion.[77]

Williams does not dispute these facts. Rather, he contends that the Ohio appeals court "misapplied" the findings concerning the establishment of probable cause.[78] But as noted, under *Stone* the federal habeas court does not address the correctness of the state court's decision[79] but only asks whether the petitioner had a full and fair opportunity to litigate his claim, which Williams uncontestably did.

*Ground Eight – re-reading of testimony*

As has been stated by federal habeas courts, the United States Supreme Court has never held that the Constitution requires any procedure for handling requests from the jury for the re-reading of trial testimony.[80] Thus, if the U.S. Supreme Court has not provided any clearly established federal law on this matter, then a state court cannot be said to have either acted contrary to such non-existent law or applied it unreasonably.[81]

---

[76] *Id*. at 526.
[77] See, ECF No. 15 at 39 (citing record).
[78] ECF No. 1.
[79] *Brown v. Berghuis*, 638 F.Supp. 2d 795, 812 (E.D. Mich. 2009).
[80] *McCoy v. Crutchfield*, 2015 WL 1097353, at *1 (S.D. Ohio March 11, 2015).
[81] *McCoy v. Crutchfield*, 2014 WL 1814035, at *11 (S.D. Ohio May 7, 2014), adopted, 2015 WL 1097353 (S.D. Ohio March 11, 2015).

*Ground Nine – cumulative error*

It is well-settled that claims of cumulative error are not cognizable in a federal habeas proceeding.[82]

*Ground Ten – imposition of court costs*

Because federal habeas corpus only concerns the lawfulness of the petitioner's confinement, a federal habeas court cannot consider claims for relief arising from the imposition of court costs, fines, fees or restitution.[83]

*Conclusion as to Grounds Two, Five, Six, Eight, Nine and Ten*

For the reasons stated, I recommend that Grounds Two, Five, Six, Eight, Nine and Ten be dismissed as non-cognizable.

### AEDPA Review

The State argues that Grounds Two (insufficiency of the evidence), Three (denial of the Rule 29 motion), Four (change of venue) and Seven (ineffective assistance of trial counsel) should be denied after AEDPA review because the decision of the Ohio appeals court as to these claims was not an unreasonable application of clearly established federal law.

---

[82] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).
[83] *See, e.g.*, *Robinson v. Woods*, 2016 WL 3256837, at 17 (W.D. Mich. June 14, 2016).

*Grounds One and Three*

Initially, the State notes that these two claims may be addressed together since they both are based on the same sufficiency of the evidence standard.[84]

In that regard, the well-established federal law for determining if a conviction was supported by sufficient evidence was set out in *Jackson v. Virginia*.[85] Under the rubric of *Jackson*, a conviction is supported by sufficient evidence if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[86]

Under this standard, a conviction may be supported by either direct or circumstantial evidence.[87] Moreover, the standard does not require the prosecution to rule out every hypothesis beyond a reasonable doubt.[88] Rather, the reviewing habeas court, when faced with facts that support conflicting inferences, must presume that the trier of fact resolved any conflicts in favor of the prosecution.[89] To that point, a reviewing court resolves inconsistencies in witness testimony and draws reasonable inferences in favor of the prosecution and does not reassess credibility[90] or reweigh the evidence, which remains the responsibility of the jury alone.[91] Simply put, the reviewing court may not make its own

---

[84] ECF No. 15 at 22, fn. 4.
[85] 443 U.S. 307 (1979).
[86] *Id.* at 319.
[87] *Scott v. Elo*, 302 F.3d 598, 602-03 (6th Cir. 2002).
[88] *Jackson*, 443 U.S. at 326.
[89] *Id.*
[90] *Mathews v. Abramatys*, 319 F.3d 780, 788 (6th Cir. 2003).
[91] *Jackson*, 443 U.S. at 319.

subjective determination of guilt or innocence or otherwise substitute its opinion for that of the jury.[92]

In addition to the deference accorded to the trier of fact's verdict required by *Jackson*, the federal habeas court applying that standard in the context of the AEDPA must also accord deference to decision of the state appeals court that itself found sufficiency of the evidence,[93] consistent with its understanding of state law as it applies that law to the facts it finds.[94]

Here, Williams asserts initially that his conviction for complicity to commit aggravated murder must be set aside because he was not specifically charged with the crime of complicity.[95] Whatever the merit to that assertion, the record is clear that Williams never asserted any claim to any court based on a defective indictment.[96] As such, he may not raise such a claim in his traverse for the first time.[97]

That said, Williams himself admits that the trial testimony of Eric Yingling could support his conviction beyond a reasonable doubt,[98] but argues that Yingling's testimony

---

[92] *Id*. at 318-19.
[93] *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).
[94] *Nash v. Eberlin*, 437 F.3d 519, 524-25 (6th Cir. 2006).
[95] ECF No. 20 at 4.
[96] For example, his appellate brief on direct appeal solely focuses the sufficiency of the evidence argument on the fact that no witness other that Yingling implicated Williams in the crime. See, ECF No. 15, Attachment at 269-71. There is no assertion that the indictment lacked a charge of complicity.
[97] Arguments raised for the first time in the traverse are not properly before the district court and are deemed waived. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).
[98] ECF No. 20 at 9.

was "circumstantial"[99] and that it should be "viewed with grave suspicious (sic)"[100] due to the fact that Yingling testified to obtain a deal for himself[101] and he later recanted his testimony in a voice mail left with Williams's attorney.[102]

For the State's part, it notes that the appeals court initially cited to the correct constitutional *Jackson* standard for evaluating the claim of insufficient evidence.[103] The appeals court then points to Williams's DNA on a cigarette butt found in the hallway next to the kitchen where the bodies were found and the testimony of Eric Yingling, which, although inconsistent with the evidence in some minor details and challenged at trial, was otherwise supported by key facts, such as the presence of Iraqi money, which were not made public by police during the investigation.[104]

The appellate court then reviewed each of the charges individually, detailing how Yingling's testimony and the physical evidence supported conviction for aggravated burglary,[105] kidnapping,[106] and aggravated murder.[107] The appeals court found that their examination of "all the evidence offered at trial, construed in favor of the prosecution, leads us to conclude that there was sufficient evidence presented to the jury, which if

---

[99] *Id.*

[100] *Id*.

[101] *Id*. at 11.

[102] *Id.* at 12.

[103] ECF No. 15 at 25. As the State further notes, the Ohio court actually cited to the Ohio case which incorporates *Jackson* into Ohio law. ECF No. 15 at 25, fn 5.

[104] ECF No. 15, Attachment at 26-27 (quoting appeals court opinion).

[105] *Id*. at 28 (quoting appeals court opinion).

[106] *Id*. at 28-29 (quoting appeals court opinion).

[107] *Id*. at 29-31 (quoting appeals court opinion).

believed, could convince the average mind of appellant's guilt beyond a reasonable doubt."[108]

Thus, as required by *Jackson*, now according due deference to the decision of the jury to believe the testimony of Eric Yingling and further according deference to the conclusion of the Ohio court that, when applying the elements of the charged offenses according to Ohio law found that they were proven beyond a reasonable doubt when accepting all evidence and inferences in favor of the prosecution, I recommend denying both Ground One and Ground Three on the merits.

*Ground Four – change of venue*

A criminal defendant is entitled to a change in venue when prejudicial pretrial publicity jeopardizes his right to receive a fair trial by an impartial jury.[109] Prejudice from pretrial publicity may be either actual or presumptive.[110] Prejudice may be presumed in the rare case when pretrial publicity creates an inflammatory, circus atmosphere that pervades the courthouse and surrounding community.[111] Actual prejudice is established if, after examining media coverage and jury statements during *voire dire*, the court determines that a "community-wide sentiment" exists against the defendant.[112] But, "the mere existence of

---

[108] *Id*. at 27 (quoting appeals court opinion).
[109] *Irwin v. Dowd*, 366 U.S. 717, 722-24 (1961).
[110] *Murphy v. Florida*, 421 U.S. 794, 798 (1975).
[111] *Ritchie v. Rogers*, 313 F.3d 948, 956 (6th Cir. 2002).
[112] *Nevers v. Killinger*, 169 F.3d 352, 366 (6th Cir. 1999).

any preconceived notion as to the guilt or innocence of an accused, without more, is [in]sufficient to rebut the presumption of a prospective juror's impartiality."[113]

In this case, the Ohio appeals court applied the two-part test of examining for both presumptive prejudice and actual prejudice as a result of the pretrial publicity in this case.[114] As first to presumptive prejudice, the Ohio appeals court initially cited the four factors set out by the United States Supreme Court in *Skilling v. United States*.[115] It then reviewed the six news articles submitted by Williams in his change of venue motion through the lens of the *Skilling* factors.[116] It concluded that no presumptive prejudice had been shown by those articles in that the articles contained no damaging confession from the accused or details about evidence linking the accused to the crime.[117] It further found no actual prejudice in that only two prospective jurors were removed for cause due to their acknowledged inability to be impartial and Williams failed to identify any seated juror that he claimed as actually biased.[118]

Accordingly, inasmuch as, in a detailed analysis, the Ohio appeals court cited and applied the appropriate clearly established federal law on change of venue to the facts here, I recommend finding that Ground Four be denied.

---

[113] *Irwin*, 366 U.S. at 723.
[114] ECF No. 15 at 33 (quoting appeals court opinion).
[115] 561 U.S. 358, 362-83 (2010).
[116] ECF No. 15 at 33-34 (quoting appeals court opinion).
[117] *Id*.
[118] *Id*. at 35 (quoting appeals court opinion).

*Ground Seven – ineffective assistance of trial counsel*

To establish constitutionally ineffective assistance of counsel, a petitioner must show, under the well-recognized two-part test of *Strickland v. Washington*,[119] both that counsel's representation was below an objective standard of reasonableness and that he suffered prejudice as a result.[120] As to the first prong, courts must strongly presume that counsel's conduct was within the wide range of reasonable professional assistance and that strategic choices, made after an investigation into the law and facts, are virtually unchallengeable.[121] Further, to establish prejudice, a petitioner must show that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different.[122]

In short, because both the "unreasonable application" standard of the AEDPA and the standards set out in *Strickland* are highly deferential, when the two are applied together the reviewing court is "doubly deferential" to the conclusions of the state appeals court as to ineffective assistance.[123]

Here, Williams argues first that the appeals court misconstrued his claim of ineffective assistance. He maintains that while the appeals court analyzed whether his trial counsel was ineffective in not obtaining a deal with the prosecution to reduce the

---

[119] 466 U.S. 668, 687 (1984).
[120] *Id.*
[121] *Id.* at 690.
[122] *Id.* at 694.
[123] *Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).

sentence,[124] his real claim was that his counsel was ineffective for not obtaining a deal to obtain his testimony against a co-defendant.[125]

Once again, the actual text of Williams's brief to the appeals court shows that the appellate court was not mistaken in what was presented to it as the ineffective assistance claim. In that brief, after Williams made two specific claims of ineffective assistance: (1) that counsel failed to make a proper record of the plea negotiations but nonetheless that Williams was never informed of "sentencing consequences" involved in accepting any potential plea, and (2) that counsel failed to object to "dozens" of unspecified exhibits or to, again unspecified, jury instructions.[126] The appellate brief emphasizes that it is "unclear from the record" exactly what was contemplated in any plea deal, noting in particular that "[t]he lack of proper record or discussion on this very issue [of a deal] reflects the lack of care or effort of the trial counsel."[127]

In sum, the Ohio appeals court appears to have considered the ineffective assistance claim exactly as it was submitted in Williams's brief. Any attempt now to allege that the appellate court misconstrued what happened in the negotiations is undercut by Williams's own assertion in the appellate brief that the plea discussions lack a proper record of what exactly was discussed.

---

[124] ECF No. 20 at 14-15 (quoting appeals court decision).
[125] *Id*. at 14.
[126] ECF No. 15, Attachment at 278-79.
[127] *Id.* at 278.

That said, the Ohio appeals court found that while Williams claimed counsel was ineffective for not objecting to evidence or jury instructions, listing in his brief page numbers of where purportedly objectionable things were located, "he failed to articulate any reasons why the exhibits or jury instructions were objectionable or how these alleged error prejudiced his case."[128] Similarly, the Ohio court found that as to the allegation that trial counsel had not objected to witness testimony, Williams had not offered "any specific instances of ineffectiveness concerning these allegations, much less how the alleged ineffectiveness prejudiced his case."[129]

Accordingly, because the Ohio appeals court correctly identified and employed the *Strickland* test in analyzing Williams's claims of ineffective assistance, and then found no basis for concluding that any alleged ineffectiveness prejudiced Williams, I recommend denying Ground Seven on the merits because the decision of the Ohio appeals court is not an unreasonable application of clearly established federal law.

---

[128] Id. at 407.

[129] *Id.*

**Conclusion**

For the reasons set out, I recommend that the *pro se* petition of Samuel Williams for a writ of habeas corpus under 28 U.S.C. § 2254 be dismissed in part and denied in part as is more fully detailed above.

IT IS SO RECOMMENDED.

Dated: March 12, 2021                                    s/Willaim H. Baughman Jr.
                                                        United States Magistrate Judge

## **<u>Objections</u>**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[130]

---

[130] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).